UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LAURA BREINGAN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | No. 1:10-cv-92-JAW |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff, who alleges that she was disabled as of her date last insured for benefits by fibromyalgia, obesity, migraines, supraventricular tachycardia, and anxiety, capable during that period of returning to past relevant work as a stitcher and, alternatively, of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff last met the insured status requirements of the Social Security Act on March 31, 2004, Finding 1, Record at 11; that,

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 17, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

through her date last insured, she had severe impairments of fibromyalgia and obesity, Finding 3, *id*.; that, through her date last insured, she had the residual functional capacity ("RFC") to perform non-hazardous light work, Finding 5, *id*. at 15; that, through her date last insured, she was capable of performing past relevant work as a stitcher, which did not require the performance of work precluded by her RFC, Finding 6, *id*. at 17; that, in the alternative, considering her age (39 years old, defined as a younger individual, on her date last insured), education (at least high school), work experience, and RFC, there were jobs existing in significant numbers in the national economy that she could have performed as of her date last insured, *id*.; and that she, therefore, had not been under a disability at any time from January 1, 2004, her alleged onset date of disability, through March 31, 2004, her date last insured, Finding 7, *id*. at 18. The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of inability to return to past relevant work. 20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings regarding the plaintiff's RFC and the physical and mental demands of past

work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 404.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The administrative law judge alternatively reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 404.1520(g); *Bowen*, 482 U.S. at 146 n.5; *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85-28).

## I. Discussion

The plaintiff complains that the administrative law judge erred in (i) making a Step 4 finding that was erroneous on its face, (ii) deeming her capable, at Step 5, of performing jobs precluded by her impairments, and accepting unsupported vocational testimony concerning the numbers of jobs existing in the regional and national economies, (iii) failing, at Step 2, to find a

3

severe impairment of anxiety, (iv) arriving at an RFC determination unsupported by substantial evidence, and (v) failing to properly assess her pain. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 10) at 3-15. At oral argument, counsel for the commissioner contended that (i) the challenged Step 2, RFC, and pain determinations are supported by substantial evidence, (ii) while error was committed at Step 4, it is harmless, and (iii) because the Step 4 finding stands, any error at the alternative Step 5 step is harmless. I agree and, accordingly, recommend that the court affirm the decision.

### A. Failure To Find Severe Impairment of Anxiety

The record contained sharply conflicting expert opinions regarding the degree to which the plaintiff's mental impairments affected her functioning prior to her date last insured. A treating source, Gina Gomez, M.D., submitted a mental RFC assessment (dated June 21, 2007, according to the record table of contents), in which she indicated that the plaintiff's anxiety markedly limited or effectively precluded a number of work-related functions, including the ability to maintain attention and concentration sufficient to perform work tasks throughout an eight-hour day, the ability to work in coordination with or proximity to others without being distracted by them, and the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *See* Record at 477-78.[2]

By contrast, two Disability Determination Services ("DDS") nonexamining consultants, each of whom reviewed Dr. Gomez's progress notes through April 26, 2004, nearly a month

---

[2] In response to instructions to put a check mark *or* an "X" next to each listed function that was markedly limited or effectively precluded, Dr. Gomez placed a check mark or an "X" next to every listed function. *See* Record at 477-78. In a letter to the plaintiff's attorney dated March 16, 2008, marked as Exhibit 17F and submitted no later than the time of the plaintiff's supplemental hearing on August 13, 2008, *see id.* at 23, she implied that only those functions marked with an "X" were those she considered markedly limited or effectively precluded, *compare id.* *with id.* at 497-98.

subsequent to the expiration of the plaintiff's date last insured, concluded, consistent with a finding of non-severity, that through her date last insured, her mental impairment(s) imposed only mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace, and that she had either suffered no episodes of decompensation or had adduced insufficient evidence that she had. *See id*. at 284, 286 (opinion of David R. Houston, Ph.D., dated April 4, 2006), 406, 408 (opinion of Scott W. Hoch, Ph.D., dated October 19, 2006); 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degree of your limitation in the first three functional areas as 'none' or 'mild' and 'none' in the fourth area, we will generally conclude that your impairment(s) is non-severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities[.]").

Moreover, at the plaintiff's supplemental hearing on August 13, 2008, after having reviewed the then-extant record, heard the plaintiff's testimony, and asked her several clarifying questions, *see id*. at 49-56, Dr. Alfred Jonas, a psychiatrist, testified:

> [I]t's not clear to me that there's any impairment in ability to perform activities of daily living, at least on the basis of the anxiety. I'm not sure where there's an impairment of social functioning. There . . . seemed to be some conflict going back to a month or very shortly before the alleged onset date, the thing that led to the firing. And if that's the only example of it, then I think we're looking at probably not more than a minor degree of impairment. I don't see much else in terms of any difficulty with treaters, or evaluators, or anything like that. Other relating seems to be intact. So, . . . I think we're probably not looking at more than a minor degree of impairment. In terms of concentration, persistence, and pace, I don't see anything in this record, but there isn't much in the record in this area, anyway. What there is, and this is really all nonpsychiatric material, does not seem to reflect an impairment in concentration, persistence, or pace. And then, with respect to deterioration in functional settings, I think there are none that I can determine of the basis of psychiatric material. . . . I really couldn't determine whether there were any episodes of deterioration, per se.

*Id*. at 64-65. With respect to Dr. Gomez's mental RFC opinion, Dr. Jonas testified that nothing in the record, or in Dr. Gomez's own notes, supported the finding of marked restrictions. *See id*. at 66-67.

The administrative law judge resolved the conflict by choosing to rely on "the fairly consistent opinions of Dr. Jonas and the state agency consultant, Scott Hoch, Ph.D." *Id*. at 13. He explained:

> Dr. Gomez's clinical observations and medical notes [indicate] that the [plaintiff's] psychiatric condition was responding well to medications and that she stopped taking some medications due to the improvement. In light of these discrepancies between Dr. Gomez's notes and her opinion statement, the undersigned gives minimal weight to her opinion regarding the [plaintiff's] functional [mental] capacity.
>
> The undersigned instead relies on the fairly consistent opinions of Dr. Jonas and [Dr. Hoch.]. Dr. Jonas indicated that the [plaintiff] has no limitations in activities of daily living or in concentration, persistence, and pace; none or mild limitations in social functioning; and no episodes of decompensation. Dr. Jonas, who listened to and observed the [plaintiff], emphasized, and explained that the record fails to support marked limitations in these functions as reported by Dr. Gomez. Dr. Hoch asserted that the [plaintiff] had mild limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence and pace, and had no episodes of decompensation.

*Id*. (citations omitted).

The plaintiff faults reliance on Dr. Jonas's testimony on grounds that (i) it was "very inconclusive[,]" (ii) Dr. Jonas admitted on cross-examination that the plaintiff's testimony concerning a failed work attempt in 2006 lent support to Dr. Gomez's finding of marked restrictions,[3] (iii) Dr. Jonas spoke only of the individual conditions he identified, rather than considering the overall effect of the combination of impairments, (iv) and Dr. Jonas did not have

---

[3] The plaintiff testified that she attempted to return to work in 2006 as a rental agent for a company named Keystone, but left after three or four weeks because she could not handle the stress of the job. *See* Record at 27, 41-42. She testified that the frequency of her migraine headaches increased when she tried to work at Keystone, that her head would feel like it was going to explode, and that she would become nauseous and actually begin vomiting in the bathroom at work by 3:00 p.m. *See id*. at 41.

6

the benefit of review of a statement dated September 9, 2008, in which Dr. Gomez attributed the plaintiff's marked limitations to a combination of migraines, anxiety, and fibromyalgia and clarified that the plaintiff had been unable to tolerate the stress of full-time competitive employment since before March 31, 2004. *See* Statement of Errors at 7-11. The plaintiff faults reliance on Dr. Hoch's opinion on grounds that Dr. Hoch (i) never evaluated the plaintiff for anxiety but only for a mood disorder, (ii) never saw Dr. Gomez's explanatory letter or statement, (iii) had no knowledge of the plaintiff's difficulties when she attempted to return to work in 2006, and (iv) did not evaluate the combined effects of anxiety, pain from fibromyalgia, and migraines. *See id*. at 9.

For the following reasons, the plaintiff falls short of making a persuasive case that the opinions of Drs. Jonas and Hoch fail to stand as substantial evidence that the plaintiff had a non-severe mental impairment:

1. Dr. Jonas's testimony cannot fairly be characterized as inconclusive. Rather, he indicated that the *evidence* was inconclusive of a finding of a severe mental impairment at Step 2. *See* Record at 63-65. While a claimant's burden at Step 2 is *de minimis*, the claimant bears the burden of proving the existence of a severe impairment. *See, e.g., McDonald*, 795 F.2d at 1123.

2. Nothing in Dr. Jonas's testimony on cross-examination undercuts his primary testimony. As counsel for the commissioner noted at oral argument, Dr. Jonas agreed that there would be "some support" for several of the marked limitations found by Dr. Gomez *only* upon making certain pivotal assumptions at the plaintiff's counsel's request. These included assumptions that (i) Dr. Gomez was aware of how the plaintiff functioned when she tried to go back to work in 2006, (ii) the plaintiff's testimony regarding that work attempt was accurate,

7

(iii) Dr. Gomez assumed that that's what would have happened had the plaintiff tried to go back to work prior to her date last insured, (iv) the vomiting was the result of anxiety and stress rather than a physical condition, (v) these symptoms occurred despite the fact that the plaintiff was taking greater than her usual frequency of Xanax, a medication prescribed to control her anxiety, and (vi) a return to work after 2000 in a setting in which the plaintiff dealt with co-workers would bring on these symptoms. *See* Record at 68-69. Dr. Jonas never testified that he agreed that any of these underlying assumptions was accurate. *See id*.

3. The criticism that Drs. Jonas and Hoch failed to consider the combined effect of the plaintiff's impairments misses the mark. The plaintiff points to no authority for the proposition that an expert consultant, as opposed to an adjudicator, has such an obligation. As counsel for the commissioner noted at oral argument, the First Circuit has expressly rejected that notion. *See Evangelista v. Secretary of Health & Human Servs.*, 826 F.2d 136, 144 (1st Cir. 1987) ("The basic idea which the claimant hawks – the notion that there must always be some super-evaluator, a single physician who gives the factfinder an overview of the entire case – is unsupported by the statutory scheme, or by the caselaw, or by common sense, for that matter. Though it is sometimes useful to have such testimony presented, we decline to lay down an ironclad rule that, without it, a judge is powerless to piece together the relevant medical facts from the findings and opinions of multiple physicians.").

4. That Drs. Jonas and Hoch did not see Dr. Gomez's explanatory statement does not undermine the status of their opinions as substantial evidence of the non-severity of the plaintiff's mental impairments. The statement in question is dated September 9, 2008, subsequent to the issuance of the administrative law judge's decision on September 4, 2008. *See* Record at 18, 499. Such tardily submitted evidence cannot supply a basis for remand unless:

8

(i) the evidence is new and material *and* a claimant demonstrates good cause for its belated submission or (ii) regardless of whether there is such good cause, the Appeals Council has given an "egregiously mistaken ground" for its action in refusing review in the face of such late-tendered evidence. *Mills v. Apfel*, 244 F.3d at 1, 5-6 (1st Cir. 2001). The plaintiff does not even attempt to make such a showing. Hence, this evidence is non-cognizable for purposes of assessing the supportability of the administrative law judge's ruling.[4]

5. That Dr. Hoch did not know of the plaintiff's failed 2006 work attempt at Keystone is immaterial. Dr. Jonas, who had the benefit of that testimony, did not consider it indicative of a more than non-severe mental impairment as of the plaintiff's date last insured. No evidence was submitted that indicated otherwise until the plaintiff filed Dr. Gomez's September 9, 2008, statement following the issuance of the administrative law judge's adverse decision.

6. The plaintiff does not explain how Dr. Hoch's decision to evaluate her condition as an affective, rather than an anxiety, disorder could have impacted his opinion that her mental impairment(s) were non-severe. Dr. Hoch took into account record evidence bearing on the plaintiff's mental health, including Dr. Gomez's progress notes. *See* Record at 408.

---

[4] To the extent that the plaintiff means to reference Dr. Gomez's explanatory statement of March 16, 2008 (Exhibit 17F), which was submitted no later than the day of the supplemental hearing, *see* Record at 47, its unavailability to Dr. Hoch, or even to Dr. Jonas, does not undermine the validity of their Step 2 opinions. At oral argument, counsel for the commissioner persuasively argued that the March 2008 statement actually supports the commissioner's position. In that statement, Dr. Gomez wrote: "*At this point* because of her underlying anxiety and fibromyalgia, *which had worsened after March of 2004*, she is probably limited with regards to her ability to work." *Id*. at 497 (emphasis added). This suggests that Dr. Gomez did not consider the plaintiff to have become markedly limited until after her date last insured. As counsel for the commissioner noted, Dr. Gomez did not state until September 2008 that she considered the plaintiff more likely than not to have been incapable as of March 31, 2004, of returning to full-time work. *See id*. at 499. However, as noted above, the September 2008 statement, submitted subsequent to the adverse decision, is not properly considered for purposes of this appeal.

In any event, even assuming *arguendo* that this undermines reliance on Dr. Hoch's opinion, the Step 2 finding remains supported by substantial evidence in the form of Dr. Jonas's testimony.[5]

### B. RFC Determination

The plaintiff next faults the administrative law judge for crafting an RFC unsupported by substantial evidence of record, arguing that:

1. He failed to give any consideration to the functional impact of her obesity or migraine headaches, although he determined that her obesity was a severe impairment and Dr. Jonas testified that her migraines were an "aggravating" factor. *See* Statement of Errors at 12.

2. He necessarily interpreted raw medical evidence in assessing the effects of her obesity, given that no physician offered any opinion concerning those effects. *See id*. at 13.

3. He failed to consider her anxiety in combination with her fibromyalgia or with any other severe or non-severe condition, including her supraventricular tachycardia ("SVT"), which Dr. Jonas testified might be the cause of her dizziness. *See id*. at 12. Although only Dr. Gomez discussed the combined effect of the plaintiff's anxiety, migraines, and fibromyalgia, the administrative law judge gave her discussion little weight. *See id*. at 13.

---

[5] As an aside, the plaintiff takes issue with the decision to accord little weight to the Gomez mental RFC opinion on the ground that the administrative law judge necessarily interpreted raw medical evidence by (i) concluding that review of the subsequent medical evidence, including Dr. Gomez's opinion evidence, would not have altered Drs. Hoch and Jonas's opinions and (ii) assigning "medical significance to what appeared to his lay view to be a discrepancy between Dr. Gomez's records and her opinions as expressed in her medical source statement." Statement of Errors at 11-12. The argument is without merit. While an administrative law judge is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, *see, e.g., Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990), he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter alia*, judging whether later submitted evidence is material and whether there are discrepancies between a treating source's opinion and his or her underlying progress notes, *see, e.g., Rodriguez,* 647 F.2d at 222 ("[T]he resolution of conflicts in the evidence and the determination of the ultimate question of disability is for [the administrative law judge], not for the doctors or for the courts."). In addition, as noted above, Dr. Gomez's September 9, 2008, opinion is not cognizable for purposes of this appeal.

4. He failed to adequately assess the effect of the plaintiff's anxiety. *See id*. Only Drs. Jonas and Gomez assessed the impact of her anxiety, and Dr. Jonas conceded on cross-examination that her difficulties in her attempt to return to work in 2006 would support Dr. Gomez's assessment of marked limitations in several work-related areas of functioning. *See id*.

For the reasons that follow, these points are unpersuasive:

1. There is no indication of record that the administrative law judge impermissibly construed raw medical evidence to arrive at functional limitations stemming from obesity. Rather, he assigned substantial weight to Dr. Gomez's opinion that the plaintiff was physically capable of light work. *See id*. at 16. While, in her physical RFC opinion, Dr. Gomez did not mention obesity, *see id*. at 473-76, her progress notes indicate that she monitored the plaintiff's weight and was aware that she was overweight (205 pounds) as of April 1, 2004, *see, e.g., id*. at 323. Her physical RFC opinion presumably reflected any limitations attributable to that condition.

2. Dr. Jonas's testimony, as a whole, is consistent with a finding that the plaintiff's migraine headaches and SVT imposed virtually no functional restrictions. He testified that the migraines, which were as infrequent as twice a year and controlled by medication, did not represent "much of . . . an interference" with the plaintiff's ability to work, although "potentially, it become[s] an aggravating factor where it can interfere with her functioning in some way, potentially, but not . . . on its own." *Id*. at 60. While Dr. Jonas acknowledged that SVT *could be* the cause of the plaintiff's vague complaint of dizziness, he testified in essence that the etiology of that symptom was unclear. *See id*. As counsel for the commissioner observed at oral argument, there is substantial record evidence that the plaintiff's headaches and SVT symptoms were controlled on medication, particularly Toprol. *See, e.g., id*. at 323-24, 342, 355, 471-72.

11

3. For reasons discussed above, the administrative law judge supportably concluded that the plaintiff's anxiety was non-severe, imposing only mild difficulties in maintaining social functioning, *see id*. at 14, and he supportably declined to embrace Dr. Gomez's mental RFC opinion.

The plaintiff's several challenges to the administrative law judge's RFC determination fall short.

### C. Assessment of Pain

The plaintiff next faults the administrative law judge's assessment of her pain, stating that he (i) failed to make the particularized inquiry required by *Avery v. Secretary of Health & Human Servs*., 797 F.2d 19, 29 (1st Cir. 1986), an inquiry that she contends was particularly important because of her diagnosis of fibromyalgia, a condition that normally results in significant pain, and (ii) he applied the wrong legal standard in assessing whether pain had "totally disable[d]" her rather than analyzing the specific ways in which pain limited her functioning – for example, whether it precluded frequent reaching. *See* Statement of Errors at 14-15 (quoting Record at 16) (internal quotation marks omitted).

*Avery* instructs that an adjudicator "be aware that symptoms, such as pain, can result in greater severity of impairment than may be clearly demonstrated by the objective physical manifestations of a disorder." *Avery*, 797 F.2d at 23 (citation and internal quotation marks omitted). "Thus, before a complete evaluation of this individual's RFC can be made, a full description of the individual's prior work record, daily activities and any additional statements from the claimant, his or her treating physician or other third party relative to the alleged pain must be considered." *Id*. (citation and internal quotation marks omitted).

With respect to fibromyalgia in particular, the First Circuit has observed:

> Fibromyalgia is defined as a syndrome of chronic pain of musculoskeletal origin but uncertain cause. Further, the musculoskeletal and neurological examinations are normal in fibromyalgia patients, and there are no laboratory abnormalities. The American College of Rheumatology nonetheless has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, and point tenderness in at least 11 of 18 specified sites.

*Johnson v. Astrue*, 338 Fed. Appx. 3, 4 (1st Cir. 2009) (citations and internal punctuation omitted).

Once an administrative law judge accepts a diagnosis of fibromyalgia, he or she has "no choice but to conclude that the claimant suffer[s] from the symptoms usually associated with such condition, unless there [is] substantial evidence in the record to support a finding that claimant did not endure a particular symptom or symptoms." *Id*. at 8 (citation and internal punctuation omitted). "The primary symptom of fibromyalgia, of course, is chronic widespread pain[.]" *Id*.

In this case, the administrative law judge pointed to substantial evidence indicating that the plaintiff's fibromyalgia did not, as of her date last insured of March 31, 2004, impose disabling (or, for that matter, chronic, widespread) pain. *See, e.g*., Record at 12, 16 (both the medical record and the plaintiff in her written statements indicated that her symptoms of joint pain and weakness were not persistent, and the plaintiff stated that medications appeared to help), 201 (written statement by plaintiff that she had a hard time getting out of bed some days, but after she was up for a while, she could start moving a little better and that she was walking to keep her muscles moving, lower her cholesterol and blood pressure, and lose weight), 207 (written statement by plaintiff that staying on her medications seemed to help), 311 (plaintiff noted by Dr. Gomez on September 21, 2004, to "continue[] to have some problems every now and then with joint pains, neck pains and also with some weakness and sometimes feelings of pass out"), 270 (plaintiff noted by specialist Fadi M. Ajine, M.D., who examined her on

13

November 10, 2004, on referral from Dr. Gomez, to have complained of achiness involving multiple joints and muscles for approximately six years but more pronounced since April 2004).

Consistent with *Avery*, the administrative law judge took testimony from the plaintiff at her supplemental hearing regarding, *inter alia*, her claimed symptoms prior to her date last insured. *See id.* at 28-43. The plaintiff testified that, but for anxiety and occasional panic attacks, which decreased after she was fired for absenteeism from her New Balance job in 2000, she was feeling "[p]retty good" until she became ill during a trip with family to Florida in March 2004. *See id*. at 26, 31-33. She testified that, upon her return from Florida, the biggest problem she had probably was an irregular heartbeat, in addition to her anxiety. *See id*. at 28. She also complained of general weakness, vomiting, and vision problems at that time. *See id*. at 33-35. She stated that she also had pain mostly through her neck, shoulders, back, and down her leg. *See id*. at 36.

Medical evidence of record corroborates, consistent with the plaintiff's own testimony, that her joint and muscle pain became more significant subsequent to her date last insured. *See, e.g., id*. at 270, 311-12, 319, 321, 323. As noted by counsel for the commissioner, this includes Dr. Gomez's March 2008 statement indicating that the plaintiff's fibromyalgia and other problems worsened after March 31, 2004. *See id*. at 497 ("*At this point* because of her underlying anxiety and fibromyalgia, *which had worsened after March of 2004*, she is probably limited with regards to her ability to work. Because of her fatigue and generalized aches, she probably cannot perform work tasks throughout an eight-hour workday.") (emphasis added).

Pain determinations – like credibility determinations in general – are "entitled to deference, especially when supported by specific findings." *Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987). That is the case here.[6]

### D. Step 4 Determination

At Step 4, based on the testimony of a vocational expert present at the plaintiff's supplemental hearing, the administrative law judge found her capable of returning to "past relevant work as a stitcher (DOT [Dictionary of Occupational Titles (U.S. Dep't of Labor, 4th ed. rev. 1991)] # 782.684-018)[.]" Record at 17. As the plaintiff points out, *see* Statement of Errors at 4, and as counsel for the commissioner acknowledged at oral argument, the DOT citation given, which describes the job of hand embroiderer, is wrong; the correct citation is DOT § 690.682-082, which describes the job of stitcher, standard machine.[7]

Nonetheless, as counsel for the commissioner persuasively argued, the error is harmless. The DOT indicates that the job of a hand embroiderer is a sedentary job, while that of a stitcher, standard machine, is a light job. *See* DOT §§ 782.684-018, 690.682-082. The DOT does not reflect that either job entails hazardous work, s*ee id.*, and the plaintiff points to no record citation

---

[6] At oral argument, the plaintiff's counsel made a materially different argument regarding pain than that contained in the statement of errors, which he had not authored. He contended that the administrative law judge erred in (i) purporting to give great weight to Dr. Gomez's physical RFC assessment but ignoring her statement that it was medically reasonable to expect that the plaintiff's ability to maintain attention and concentration on work tasks throughout an eight-hour day was significantly compromised by pain, prescribed medication, or both, *see* Record at 475, and (ii) according weight to Dr. Jonas's testimony that a fibromyalgia diagnosis is problematic, *see id.* at 12, 58-59, although Dr. Jonas is not a specialist in such diseases but rather a psychiatrist, is a non-examining source, and gave testimony regarding fibromyalgia that was inconsistent with *Johnson.* No doubt because he was unprepared to do so, *c*ounsel for the commissioner did not respond to these newly-minted arguments, focusing instead on the myriad points raised in the statement of errors. I decline to consider the plaintiff's new arguments, raised for the first time at oral argument. *See Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.") (footnote omitted).

[7] The plaintiff described a job for the New Balance shoe company in which she "[r]an a computer stitching machine called 'Orisol.'" Record at 193.

or authority indicating that the job of computer stitcher as she actually performed it or as it is generally performed entails hazardous work, *see* Statement of Errors at 3-4. Accordingly the plaintiff, who supportably was found to have retained the RFC to perform light, non-hazardous work, was capable of returning to past relevant work as a computer stitcher, rendering the error in DOT citation harmless.[8]

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 17th day of January, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[8] At oral argument, the plaintiff's counsel contended that his client's job of computer stitcher as she actually performed it raised a question of whether its performance was hazardous. As he acknowledged, this argument was not made in the statement of errors. It therefore is waived. *See, e.g., Farrin*, 2006 WL 549376, at *5.